SO ORDERED: September 15, 2009.

**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

IN RE: )
JERALD E. TURNER ) CASE NO. 04-92951-BHL-7
    Debtor. )

**ORDER**

This matter came before the Court for hearing on June 24, 2009, on the debtor's **Motion to Hold Creditor L. L. Receivables Company in Contempt for Violation of Discharge Injunction** [Docket No. 21], filed on February 23, 2009,[1] which seeks to hold L. L. Receivables Company and its officer, Howard Howe, in contempt for willfully violating the discharge injunction. The **Affidavit of Howard Howe** was filed in response to the foregoing motion [Creditor's Exh. "A"].

Background Facts

1.    The debtor filed a Chapter 7 petition on August 18, 2004.

---

[1] The Court heard argument on the motion after setting aside its previous Order of Contempt entered pursuant to a March 16, 2009 hearing, at which the Respondent failed to appear or otherwise respond.

2. In Schedule F, the debtor listed an unsecured debt owed to Citibank.

3. Such debt had been assigned to L. L. Receivables ["LLR"]. Howard Howe, general counsel and officer of LLR, tendered a letter dated July 9, 2004 addressed to Jerald Turner advising him of LLR's ownership of the account.

4. The trustee filed a report of no distribution on November 11, 2004, and on December 15, 2004, the debtor was granted a discharge.

5. On August 20, 2004, LLR filed suit against the debtor in Harrison Circuit Court, and on July 14, 2005, obtained a judgment against the debtor in the amount of $24,669.29.

6. On July 21, 2005, Howe sent a copy of the state court judgment and interrogatories to the debtor.

7. On July 25, 2005, the debtor's spouse telephoned Howe to advise him that the debtor had filed bankruptcy. Howe asked her to provide a copy of schedule "F" showing LLR as a listed creditor, the date of the filing, and something with a cause number on it. The debtor did not respond to Howe's request.

8. On August 15, 2005, Howe wrote to the debtor requesting documentation, and another letter was sent on August 29, 2005. The debtor did not respond to the letters and Howe did not investigate the debtor's allegation of bankrtupcy.

9. On September 19, 2005, LLR moved for proceedings supplemental in state court.

10. Finally, on November 28, 2005, Howe received a fax regarding the debtor's bankruptcy filing, and at that point, LLR halted collection activity.

11. In or about September of 2008, the debtor was attempting to refinance his home

when LLR's judgment lien was discovered. When the loan officer contacted Howe to release the lien, Howe refused. Debtor's counsel contacted Howe in October of 2008, and Howe again refused, asserting that the debt had not been discharged inasmuch as LLR had not been listed as a creditor.

12. The debtor moved to reopen the bankruptcy case on January 23, 2009, and subsequently moved to hold LLR in contempt for its alleged continuing violation of the discharge injunction.

## Discussion

Upon the filing of a bankruptcy petition, section 362 automatically imposes a stay upon most actions by creditors to satisfy their claims against the debtor. Section 362(k)(1) provides that ". . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Company, Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989). The failure to correct an act done in violation of an automatic stay has likewise been held to be an act of contempt. *Id.; See also, In re Rhodes*, 155 B.R. 491 (W.D. Ark. 1993); *Abrams v. Southwest Leasing and Rental, Inc. (In re Abrams)*, 127 B.R. 239, 241-42 (Bankr.9th Cir. 1991).

It is hornbook law that "[t]he automatic stay takes effect on the date the bankruptcy petition was filed, regardless of whether the creditor or other affected entity has knowledge of the bankruptcy, and without the necessity of any formal service of process or notice to the creditors. The automatic stay is effective against the world, regardless of notice." 9B Am.Jur.2d

Bankruptcy § 1725. That treatise goes on to state that "[o]nce a party receives reasonable, actual notice of a bankruptcy petition, that party has the responsibility to ensure that the stay is not violated and to remedy inadvertent violations committed in ignorance of the stay." *Id.; And see, Indiana Dept. of Revenue v. Williams*, 301 B.R. 871 (S.D.Ind. 2003) (holding that a creditor in violation of the stay has a duty to correct its violative behavior, whether that behavior is intentional or inadvertent).

In this case, the state court action was initiated during the pendency of the bankruptcy and while the automatic stay was in place. The judgment was actually rendered after the conclusion of the bankruptcy case. That action, while initiated in violation of the automatic stay, was not willful. On July 25, 2005, however, when the debtor's spouse spoke to Howe, informing him of the bankruptcy, LLR was put on notice of the bankruptcy filing. The Court finds, as a matter of law, that an oral representation by a person with apparent authority, constitutes reasonable and actual notice. *See, e.g., In re Johnson*, 501 F.3d 1163 (10th Cir. 2007). In that case, the court noted that a telephone call provided actual notice to the creditor and further stated that the creditor "is a sophisticated car dealership represented by counsel and admittedly quite familiar with repossession and bankruptcy procedure. [The creditor] knew Debtors' name and address and could easily have called the clerk for the single bankruptcy court covering the area in which Debtors resided." *Id.* at 1173. Likewise, in *Rowe v. Steinberg*, 253 B.R. 524 (E.D. Mich. 2000), the Court noted that "[a]lthough the Sixth Circuit has not ruled on whether oral notice suffices to create constructive notice required under § 523, the better view is that it does. There simply is no logical reason why a debtor's orally informing a creditor that a bankruptcy case is filed should not, well, put the creditor on actual notice that the claim is filed." *Id.* at 528.

Despite Howe's protestations to the contrary, it was incumbent upon LLR to investigate the allegation of bankruptcy before proceeding with its collection efforts. With modern electronic case filing, it takes less than a minute for an attorney to verify an assertion that a debtor has filed bankruptcy. Any action taken by LLR subsequent to July 25, 2005, therefore, was taken in willful disregard of the bankruptcy stay.

In this case, however, the debtor does not complain of a violation of the automatic stay but rather that LLR violated the discharge injunction which arises by virtue of section 524(a)(2). That section states, in pertinent part:

> (a) A discharge in a case under this title —
>
>   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived; and
>
>   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . .

If the underlying debt was discharged, section 524(a)(1) provides that LLR's judgment is void.[2]  *See, e.g., In re Presley*, 288 B.R. 732 (Bankr.W.D.Va. 2003); *In re Cruz*, 254 B.R. 801 (Bankr.S.D.N.Y. 2000). Nor may a creditor proceed *in rem* against a property interest of the

---

[2]  It should be noted that actions taken in violation of the automatic stay are generally void even without notice. *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir. 1987); *In re Smith*, 876 F.2d 524 (6th Cir. 1989); *In re Sambo's Restaurants, Inc.*, 754 F.2d 811 (9th Cir. 1985); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir. 1990); *In re Albany Partners, Leg.*, 749 F.2d 670 (11th Cir. 1984). Similarly, it has been held that a writ of execution obtained after the filing of a bankruptcy petition did not create a lien against the debtor's property, since the writ was obtained in violation of the stay and thus legally void when issued. *In re Baird*, 55 B.R. 316 (Bankr.W.D.Ky. 1985).

debtor if the creditor had no lien before the bankruptcy case and the debtor's personal liability has been discharged. *In re Paeplow*, 972 F.2d 730 (7th Cir. 1992).

The general rule is that a debt scheduled under the name of the original creditor is not dischargeable if the debtor knew or ought to have known that the debt had been transferred and thus could have scheduled the debt in the name of the new creditor. *See, In re Brantley*, 116 B.R. 443 (Bankr.D.Md. 1990). In this age of transferred claims, sold mortgages, and service agents, however, debtors commonly list original creditors and not the current obligee. Howe produced into evidence a letter that was written to the debtor just prior to the filing advising him that LLR owned the debt. Despite that fact, however, the Court finds that the personal liability was discharged when the debtor listed the debt in his schedules. That is because in a no-asset chapter 7 case, no deadline is set for the filing of claims, and the lack of notice to the creditor does not deprive the creditor of the opportunity to file a timely proof of claim. Thus, this Court has long held that in a no-asset chapter 7 case, a debt may be discharged even if it is not listed. *See, National Association of System Administrators, Inc. v. Avionics Solutions, Inc.*, 2008 WL 140773 (S.D.Ind.) (citing *Lucas v. Wilson*, Case No. 96-92041-BHL-7, Adversary Proceeding No. 00-9029, at 6 (Bankr.S.D.Ind. 2000)). Section 523(a)(3) of the Code provides that unless the debt falls within section 523(a)(2), (a)(4), or (a)(6), it is discharged. Because there has been no allegation that the debt fits within any of the stated exceptions to discharge, the debt to LLR was discharged and its subsequent lien invalid. The only question which remains is whether the failure of LLR to release the lien, albeit invalid, justifies a finding of contempt.

The debtor bears the burden of proof on a motion to enforce discharge injunction and must prove the violation by clear and convincing evidence. *In re Weinhold*, 393 B.R. 623, 628

(Bankr.E.D.Wis. 2008) (citation omitted). In order to meet his burden, the debtor must first prove that the subject debt was discharged which, in this case, has already been established. Next, the creditor may be held in contempt if it (1) had knowledge of the post-discharge injunction; and (2) intended the actions which violated the injunction. *Id.* at 628-629 (citing *Hardy v. United States (In reHardy*), 97 F.3d 1384 (11th Cir. 1996)).

The action which constitutes the alleged violation is the creditor's failure to release the lien. While initially unaware of the bankruptcy filing, LLR was put on notice when it commenced its post-judgment collection efforts. At that point, LLR knew that its judgment was obtained post-petition and in violation of the automatic stay. So the first prong of the foregoing test is satisfied.

Finally, the Court must consider whether LLR's failure to release its judgment lien violated the injunction and, if so, whether such action was intentional. In *In re Pratt*, 462 F.3d 14 (1st Cir. 2006), the court was called upon to interpret a similar question. In that case, the court observed that "[i]n assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly." The court went on to note, however, that "the line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts." *Id.* at 19.

The facts of this case are not in dispute. Howe does dispute, however, various points of law which are implicated herein: whether the underlying debt was discharged; at what point LLR was put on notice of the actual bankruptcy filing; whether LLR's judgment was void; and whether LLR had an affirmative duty to undo actions taken in violation of the automatic stay.

7

Unfortunately for Howe, his position on those various points of law does not comport with established law in this jurisdiction. He maintained that the debt was not discharged, the judgment was not void, and that he had no duty to release the lien despite the fact that it was assessed in clear violation of the stay. Howe, acting in LLR's behalf, took an unreasonable position and maintained it at his peril. It is irrelevant whether Howe believed in good faith that he had a right to act as he did as it has been held that neither a good faith mistake of law nor a legitimate dispute as to legal rights relieves a willful violator of the consequences of his act. *See, In re Sullivan*, 367 B.R. 54 (N.D.N.Y. 2007). If there is a line which must be crossed before the creditor's actions are deemed contemptible, as stated by the court in *Pratt*, it appears to this Court that Howe clearly ventured across.

In another case, *In re Kitzinger*, 1999 WL 977076 (N.D.Ill.), the court found that the bankruptcy court was well within the bounds of its discretion in assessing reasonable fees and costs as sanctions when the debtor "was forced to bring contempt motions against appellant after repeated warnings and direct reference to relevant case law proving the appellant's argument invalid." Remarkably similar to the facts at bar, the court observed that "[e]ven through the time of the sanctions assessment, appellant had not complied with the court order to release the judgment lien."

The creditor's failure to release its lien, obtained in violation of the discharge injunction, was willful. The creditor's deliberate and obstinate refusal to undo that wrongful action inhibited the debtor's ability to refinance his home mortgage and has caused him to incur

significant legal fees in bringing this action.[3]  Based upon the foregoing, the Court finds that the debtor should be reimbursed his ordinary, necessary and reasonable fees and costs in bringing this action.  The debtor's **Motion to Hold Creditor L. L. Receivables Company in Contempt for Violation of Discharge Injunction** is, accordingly, **GRANTED**, and the Court assesses sanctions against LLR and Howard Howe, jointly and severally, in the amount of Thirty-Five Hundred Dollars ($3,500.00).

###

Distribution to all counsel.

---

[3]     At the hearing on June 24, counsel for debtor represented that he has invested twenty (20) hours in attempting to resolve this matter.